IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Charles W. McCormick, | ) | C/A No. 0:14-3176-RBH-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden McFadden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Charles W. McCormick, a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the respondent's motion for summary judgment.  (ECF No. 21.)  Pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), McCormick was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion.  (ECF No. 23.)  McCormick filed a response in opposition to the respondent's motion.  (ECF No. 38.)  Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and McCormick's Petition denied.

## BACKGROUND

McCormick was indicted in January 2006 in Beaufort County for murder, arson in the second degree, and possession of a weapon during a violent crime (2006-GS-07-168, -169, & -170).  (App. at 765-73, ECF No. 20-6 at 131-39.)  McCormick was represented by Samuel C. Bauer, Esquire, and on January 28-30, 2008 was tried before a jury and found guilty as charged.  The circuit court sentenced McCormick to life imprisonment for murder, and consecutive sentences of twenty-five

years' imprisonment for arson and five years' imprisonment for possession of a weapon during a violent crime.  (App. at 679-80, ECF No. 20-6 at 45-46.)

McCormick timely appealed and was represented by Joseph L. Savitz, III, Esquire, Chief Appellate Defender, who filed an <u>Anders</u>[1] brief on McCormick's behalf that presented the following issue:

> The trial judge committed reversible error by neglecting to instruct the jury on the defense of alibi.

(ECF No. 20-8.)  McCormick filed a *pro se* response to the <u>Anders</u> brief in which he raised the following issues:

1.  The trial judge committed reversible error by neglecting to instruct the jury on [the] defense of alibi . . . .

2.  I would ask the Court to look at the issue of my indictments. . . I believe my Fourth and Fourtee[n]th [Am]endment rights to due process were violated. My Sixth amendment for lack of jurisdiction . . . .

3.  I would ask the Court to look at the issue of entering my clothes as evidence. . . .  By my lawyer not attem[p]ting redirect . . . he allowed presumption to shift burden of proof.  This is ineffectiveness of counsel.  Also, the judge knowing this allowed the jury to be misle[]d . . . .

4.  I would ask the Court to look at the issue of my clothes being allowed into evidence with no gunshot residue . . . .

5.  I would ask the Court to look at the issue of Dr. Sorg and his testimony . . . .

6.  I would ask the Court to look at my [Miranda] rights being violated . . . .

---

[1] <u>Anders v. California</u>, 386 U.S. 738 (1967).  <u>Anders</u> requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.  <u>Anders</u>, 386 U.S. at 744.



7.    I would ask the Court to look at the search warrants. This is false testimony . . . .

8.    I again would ask the Court to look at the issue of my clothes . . . No testimony given says I smell like gas . . . .

(ECF No. 20-9 at 4-13.) By Order filed February 4, 2010, the South Carolina Court of Appeals dismissed McCormick's appeal. (State v. McCormick, Op. No. 10-UP-100 (S.C. Ct. App. Feb. 4, 2010); App. at 692, ECF No. 20-6 at 58.) The remittitur was issued on February 22, 2010. (App. at 693, ECF No. 20-6 at 59.)

McCormick filed a *pro se* application for post-conviction relief ("PCR") on May 20, 2010 in which he raised the following claims:

(a)    Ineffective assistance of counsel

(b)    Unreliable DNA test procedure

(c)    GSR test unreliable results

(d)    Inadmissable evidence – statements

(e)    Blood evidence

(f)    False testimony – Captain Bromage

(g)    Search warr[a]nt

(h)    False testimony – Autopsy

(i)    M[iran]da Rights – 6th Amendment

(j)    Solis[i]tor's Improper Comments

(k)    Firearm and Arson Charge

(l)    Evidence

(See McCormick v. State of South Carolina, 10-CP-07-2483; App. at 694-711, ECF No. 20-6 at 60-77.) The State filed a return. (App. at 712-16, ECF No. 20-6 at 78-82.) McCormick, through



counsel, filed an amended PCR application on August 2, 2011 in which he raised the following claims:

      (a)      Ineffective Assistance of Counsel at criminal trial; and

      (b)      Ineffective Assistance of Counsel on appeal.

(App. at 717-20, ECF No. 20-6 at 83-86.)  On August 30, 2011, the PCR court held an evidentiary hearing at which McCormick appeared and testified and was represented by Mary Frances Quindlen, Esquire. (App. at 721-49, ECF No. 20-6 at 87-115.)  By order filed October 17, 2011, the PCR court denied and dismissed with prejudice McCormick's PCR application.  (App. at 750-59, ECF No. 20-6 at 116-25.)  McCormick filed a motion to alter or amend pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure regarding the PCR court's ruling on his claim of ineffective assistance of appellate counsel.  (App. at 760-63, ECF No. 20-6 at 126-29.)  The PCR court denied McCormick's motion by order filed December 28, 2011.  (App. at 764, ECF No. 20-6 at 130.)

On appeal, McCormick was represented by Susan B. Hackett, Esquire, who filed a petition for a writ of certiorari that presented the following question:

> Did the PCR court apply an incorrect legal standard to Petitioner's claim of ineffective assistance of appellate counsel, where counsel failed to appeal the trial judge's error in admitting statements made by Petitioner during custodial interrogation without the appropriate safeguards and when he was so intoxicated he did not have the mental capacity to give a free and voluntary statement?

(ECF No. 20-11.)  The State filed a return.  (ECF No. 20-12.)  On June 23, 2014, the South Carolina Court of Appeals issued an order denying McCormick's petition for a writ of certiorari.  (ECF No. 20-13.)  The remittitur was issued July 14, 2014.  (ECF No. 20-14.)  This action followed.

## FEDERAL HABEAS ISSUES

McCormick's federal Petition for a writ of habeas corpus raises the following issues:

**Ground One:** Ineffective assistance of counsel [–] no alibi defense
**Supporting Facts:** I was in a different place at the time of crime. I was at my sister[']s house and a rest[a]urant-bar. The small dot of blood was old. I was never bleeding at any time. My sister could conf[i]rm this and the wit[]ness at the bar. My clothes never smelled like smoke or gasoline. Police verified I was at bar. No blood on sister[']s couch, no blood at bar, no blood on officers.

**Ground Two:** Ineffective assistance of counsel for rel[y]ing on state[] evidence
**Supporting Facts:** DNA – I asked my attorney Mr. Bauer to retest. Mr. Bauer told me this was an appeal issue. For not having my clothes tested. SLED test only t[w]o pieces that were cut out and found to be inconclusive. For not raising the issue that the blood spot was old. Mr. Bauer first said my clothes were not going to be allowed. But then the Judge changed her mind. Without retesting the sample DNA (which was dest[roy]ed) and retesting my clothes. I was left to rel[y] on state[']s evidence. The DNA expert also relied on state[']s evidence.

**Ground Three:** Miranda rights violated
**Supported Facts:** I was being detained and questioned as a suspect by law enforcement and a working agent of the state. I was intoxicated, tired and emotional due to what was told to me. My mind was in a spin. I'd been with my family all day and most of all night. That being a holiday.

**Ground Four:** Ineffective Assistance of appellate counsel for not appealing trial judge[']s error in allowing statements
**Supporting Facts:** Trial judge admitted statements made by myself during custodial interrogation without proper safeguards[.] I was intoxicated and did not or consider or able to give a free and voluntary statement. I did not understand at all what was happening. Even more so to what I was being told. I was falling asleep at the time or perhaps passing out.

(Pet., ECF No. 1.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing



to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law



beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting <u>Harrington</u>, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. <u>Harrington</u>, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. <u>See id.</u> at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. <u>Id.</u> Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. <u>Id.</u> at 102. "If this standard is difficult to meet, that is because it was meant to be." <u>Id.</u> Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." <u>Id.</u> at 102-03 (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997), <u>abrogated on other grounds by</u> <u>United States v. Barnette</u>, 644 F.3d 192 (4th Cir. 2011); <u>see also</u> <u>In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases</u>, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of

Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.    Summary Judgment Motion**

**1.    Procedural Default (Grounds One and Two)**

The respondent first argues that Grounds One and Two, which raise claims of ineffective assistance of trial counsel, are procedurally barred from federal habeas review. Although the PCR court addressed these issues in its order denying relief, McCormick did not present them to the state appellate court during his PCR appeal. Thus, the court agrees that these grounds are procedurally defaulted. See Coleman, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); Picard v. Connor, 404 U.S. 270, 275-76 (1971) (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state



courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding"). Moreover, these grounds would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules if McCormick attempted to raise them now. See Lawrence, 517 F.3d at 714; Longworth, 377 F.3d 437; see also Coleman, 501 U.S. 722.

While the court finds that Grounds One and Two are procedurally defaulted, or barred from federal habeas review, such claims may nonetheless be considered by a federal court if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. McCormick argues that his procedural default should be excused pursuant to Martinez v. Ryan, 132 S. Ct. 1309 (2012). Specifically, McCormick argues that PCR appellate counsel failed to appeal the claims presented in Grounds One and Two.

Generally, any errors of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of his claims. See Coleman, 501 U.S. at 752. However, in Martinez the United States Supreme Court established a "limited qualification" to the rule in Coleman. Martinez, 132 S. Ct. at 1319. The Martinez Court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315. However, McCormick's arguments fail to satisfy the limited qualification established by Martinez because ineffective assistance of PCR *appellate* counsel is not cause for default. Martinez, 132 S. Ct. at 1320 (explicitly stating that the "holding in this case does not concern attorney errors in other kinds of proceedings, including *appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts") (emphasis added); see also Johnson v. Warden of Broad River Corr., No. 12-7270, 2013 WL 856731, at *1 (4th Cir. Mar. 8, 2013)



("Accordingly, because Johnson alleges only ineffective assistance of appellate postconviction counsel, his allegations do not constitute cause for his failure to exhaust under the limited exception in <u>Martinez</u>. Instead, his claims fall under the general <u>Coleman</u> rule that ineffective assistance of postconviction counsel cannot constitute cause for procedural default."); <u>Cross v. Stevenson</u>, No. 11-2874, 2013 WL 1207067, at * 3 (D.S.C. Mar. 25, 2013) ("<u>Martinez</u>, however, does not hold that the ineffective assistance of counsel in a PCR appeal establishes cause for a procedural default.").

Therefore, the court finds that Grounds One and Two are procedurally barred from federal habeas review.

### 2.    <u>Miranda</u> **Violation (Ground Three)**

In Ground Three, McCormick appears to allege that the trial court erred in finding his responses to the coroner's initial questioning and subsequent questioning by Captain Bromage at the police substation were admissible. Prior to McCormick's trial, the trial court held a hearing during which three sets of statements were discussed by the court and the parties. These statements were categorized as (1) initial questioning by the coroner; (2) additional questioning by the coroner after McCormick was prevented by Captain Bromage at gunpoint from driving to the victim's residence due to his intoxicated state; and (3) post-<u>Miranda</u> questioning by Bromage at the substation. The trial court ruled that the first and third sets of statements were admissible but the second set was inadmissible. Therefore, the second set of statements are not at issue.

McCormick argues that the first and second sets of responses were elicited in violation of <u>Miranda</u>. While a decision containing a reasoned explanation is not required from the state court, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. In this case, this court has the benefit of the transcript of the trial court's ruling with its reasons, which may provide reasons or theories



that the appellate court could have relied upon in summarily dismissing McCormick's appeal. Therefore, the court will first consider whether the trial court's ruling unreasonably misapplied federal law or was based on an unreasonable determination of the facts. For the reasons that follow, the court finds that the trial court's decision did not unreasonably misapply clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

As stated above, the trial court held a pre-trial hearing that addressed McCormick's challenges to the admissibility of the statements. During the hearing, Captain Robert Bromage testified that he is employed with the Beaufort County Sheriff's Department and as of January 2, 2006 he was a lieutenant assigned to cold case and homicide investigation for the county. Following a fire at the residence of Ellen McCormick ("Mrs. McCormick") and the discovery of Mrs. McCormick's body at that location, information was received that Mrs. McCormick was separated from her husband (the Petitioner). McCormick was staying at the residence of his sister and brother-in-law (Lorraine and Jack Borger), which was about a five- to seven-minute drive from the victim's residence. Around 1:00 a.m. on January 2, 2006, Captain Bromage and the coroner went to the Borgers' residence to notify McCormick. At this time, Mrs. McCormick had been dead for approximately three hours. (App. at 122-24, ECF No. 20-1 at 124-26.)

Captain Bromage stated that when he and the coroner arrived, Jack Borger already knew why they were there and invited them in. They all went into the Borgers' living room. Captain Bromage explained that he and Jack Borger were standing in the background and McCormick was not in custody. Captain Bromage proceeded to explain that the coroner inquired of McCormick

> was his wife[] Ellen McCormick, were they separated, questions like that. During that time frame, I was observing Mr. McCormick and saw a fresh cut on his right hand. Fresh enough to notice, anyways.



. . . .
He was intoxicated. I mean, he was trying to pay attention to the coroner. But he was in and out and it was kind of hard to keep his attention, it appeared.

(App. at 126, ECF No. 20-2 at 2.) Captain Bromage testified that the coroner was the only person talking to McCormick and explained that "I stayed out of it at this point because, again, I was just assisting him and making sure we made the notification and got any information from a law enforcement perspective, while we were there, that we could use in the case." (App. at 126-27, ECF No. 20-2 at 2-3.) In response to the coroner's inquiry as to whether McCormick and his wife were separated, McCormick stated "not to me, and, also not as far as I'm concerned." (App. at 127, ECF No. 20-2 at 3.) Captain Bromage stated that McCormick also told the coroner that "he had not been to her house in -- since approximately Thanksgiving, hadn't had any contact with her. Well, physical contact." (App. at 128, ECF No. 20-2 at 4.)

At some point, McCormick tried calling Mrs. McCormick and "got loud" and decided he was going over to her residence. (App. at 4, ECF No. 20-2 at 4.) After Jack Borger unsuccessfully tried to talk McCormick out of getting into his truck and McCormick opened the door to his truck, Captain Bromage identified himself as law enforcement and "put [McCormick] on the ground at gunpoint because, one, he was intoxicated, and two, with a fresh laceration on his hand and the way he was acting, he was quickly becoming a suspect in the murder."[2] (App. at 129, ECF No. 20-2 at 5.) Captain Bromage stated that McCormick calmed down and returned inside the Borgers' residence. McCormick was not in handcuffs at that time. The coroner resumed asking questions at that point and Captain Bromage stated that

---

[2] Captain Bromage also states that a letter was visible in the truck that was later seized pursuant to a search warrant. (App. at 130, 136-39, ECF No. 20-2 at 6, 12-15.)



[s]ome of the questions are a little tough, but that's his job to get that information so we can, you know, make the right decisions at the scene and things like that. It really wasn't a[n] interrogation, but the coroner was asking where he was that night and things like that. And he became angry and said -- I wrote it down, but -- he says, I'll get up and kill you. And the coroner replied, excuse me? And McCormick stated, do you want me to come over there and kill you.

      In his state I took it as a threat, there's no question about it. Now, you can say that in many different ways. But the way he was saying it that night in his state of mind, there's no question that he could have actually accomplished this. He was not in handcuffs. You know, the ability, opportunity and jeopardy to put the coroner in danger at that point. So other law enforcement had arrived, which is good, at that time. We put him in handcuffs right there in his sister's house and . . . [arrested him for] [t]hreatening the life of a public official.

(App. at 130-31, ECF No. 20-2 at 6-7.)

Captain Bromage stated that following his arrest, another officer transported McCormick to the Bluffton police substation. Captain Bromage explained that at the substation, he advised McCormick of his <u>Miranda</u> rights using his South Carolina Law Enforcement Association card. Captain Bromage testified that McCormick acknowledged that he understood his rights and agreed to talk with him. Captain Bromage also stated that he questioned McCormick by himself. (App. at 131-33, ECF No. 20-2 at 7-9.) When asked whether McCormick was "so far intoxicated that he couldn't understand what you were telling him," Captain Bromage responded,

He understood. He understood his rights. There's no question about it. You know, I think he had a very limited criminal history, but I'm pretty sure he understood his rights. He was acknowledging them. . . . He did acknowledge. He said, right, right. He didn't say, yes, I understand my rights, but he would go along and tell me -- during some of the rights he'd say, yes, I understand, and I had to keep grabbing his attention to finish them. But we got them done, and he did understand.

(App. at 133-34, ECF No. 20-2 at 9-10.) Captain Bromage denied threatening McCormick or promising McCormick anything.

Captain Bromage described the colloquy that took place after McCormick was advised of his rights:



One thing I wanted to know was about the cut on his hand. So I asked him about the laceration on his hand, and he had said it happened about a day and a half prior, which would have dated it to Saturday, the 30th of December, 2005. He said he was playing with his dog and his dog scratched his hand. There was one laceration on his hand; it wasn't several. And it looked fresh. It looked a lot fresher than -- I'm not a doctor, so I called one out there to look at it. But the conclusion was it was fresh, six to eight hours old. And he had said -- like I said, he maintained that his dog did it, so –

. . . .

He said he probably went to One Hot Mama's [that night], he was very noncommittal about times and where he was. But he said he probably, went to One Hot Mama's, which we confirmed through a photograph and witnesses at that location.

.. . .

He said he was drinking vodka and tonic specifically and that -- and he also said that he had seen -- not had any contact with, but saw his wife, Ellen, that day driving in that neighborhood to a friend's house. And he said he waved. He said during that interview that, you know -- and I asked if he had any contact with her. He said, no, I listen to my wife. So apparently they must have had some kind of an agreement not to come near each other. I'm not sure.

. . . .

He said [he had the vodka tonics] at his residence. And he had mentioned something about dinner with his family. And, again, that's all on -- I recorded the entire interview, but I didn't write it all on my report, so –

(App. at 134-36, ECF No. 20-2 at 10-12.)

During cross-examination, Captain Bromage reiterated that when he stopped McCormick from getting into his truck, McCormick was "too intoxicated to get in that car and drive anywhere" and "[h]e was intoxicated to the point I would have been concerned about him getting behind a wheel and driving over to see if, you know, about -- to go to the crime scene." (App. at 140, 141, ECF No. 20-2 at 16, 17.) Captain Bromage stated that when he stopped McCormick "[i]t was a custody-type situation" and agreed it was for attempted drunk driving. (App. at 143, ECF No. 20-2 at 19.) Captain Bromage also agreed that McCormick may not have believed that he was free to leave at that point. (App. at 144, ECF No. 20-2 at 20.) Captain Bromage testified that they "were at the residence for a considerable amount of time, and I think there was moments where

[McCormick] was asleep on the sofa." (App. at 146, ECF No. 20-2 at 22.) Trial counsel inquired further into McCormick's state during the initial questioning and at the substation as follows:

> Q.    And during his initial conversation with the coroner you described him as being in and out; right?
> A.    Well, in and out as far as paying attention. He would keep going to the -- you know, the denial of his wife being dead, which could be completely normal. And then, you know, would decide he was going to call her on the phone, or get in his car, like that. So he was in and out of paying attention to what was going on. But in and out of consciousness, I don't think so.
> Q.    During the invocation -- during the reading of the <u>Miranda</u> rights, he's in and out, too, isn't he?
> A.    He's not fully paying attention to me the whole time. That's why I would have to ask him. Chuck, do you understand that right. And you hear it during the actual reading of the <u>Miranda</u>. But he also -- at the end he realized that I had questions to ask and he wanted, right, right, like let's go, let's answer them, let's get them done. So he agreed to talk to me after <u>Miranda</u>. I Mirandized him, tried to keep his attention the entire time. Whether he got every word or not, I can't tell you.
> Q.    While you're reading the rights to him, you have to -- at the end of each statement you have to say, did you hear me. Chuck; Chuck, did you hear me?
> A.    I don't remember saying that. That's possible. What I say a lot of times is, do you understand that right, after every right I read. That way I'm making sure somebody is following along with me.

(App. at 146-47, ECF No. 20-2 at 22-23.) Trial counsel then proceeded to play a digital recording of Captain Bromage's interview of McCormick at the substation. Trial counsel paused the recording at points to ask additional questions. Captain Bromage agreed that in one part it sounded like McCormick was not completely paying attention to him and that McCormick's voice was a little bit slurred. (App. at 148-49, ECF No. 20-2 at 24-25.)

As stated above, the parties and the court determined that there were three sets of statements at issue which were categorized as (1) initial questioning by the coroner; (2) additional questioning by the coroner after McCormick was prevented by Captain Bromage at gunpoint from driving to the victim's residence due to his intoxicated state; and (3) post-<u>Miranda</u> questioning by Bromage at the substation. With regard to the first set of statements, the State argued that McCormick was not in



custody and not subject to interrogation at that point, while trial counsel argued that because Captain Bromage subsequently stopped McCormick when he tried to leave the residence, he was in custody. (App. at 152-54, ECF No. 20-2 at 28-30.)  In ruling that the first set of statements was admissible, the trial court stated that it did "not find that [McCormick] was in custody at that time.  It was the coroner asking him questions.  He is not law enforcement.  I do not believe he was in custody at the time; therefore, <u>Miranda</u> of course didn't apply, and I do find that those statements were voluntary." (App. at 154, ECF No. 20-2 at 30.)

With regard to the third set, trial counsel challenged whether McCormick's waiver of his <u>Miranda</u> rights was actually voluntary in light of his intoxicated state, pointing out that McCormick was in no shape to drive and had slurred speech, and that Captain Bromage testified McCormick was "in and out, he was not with me."  (App. at 155, ECF No. 20-2 at 31.)  Trial counsel argued that the relevant question is whether McCormick was so intoxicated as to be unable to intelligently waive his rights, and in light of <u>Boggs v. Bair</u>, 892 F.2d 1193 (4th Cir. 1989), the testimony in this case indicated that McCormick's intoxication "rose to the level of rendering his waiver of rights as involuntary."  (<u>Id.</u>)  In response, the State argued, relying upon <u>State v. Saxon</u>, 201 S.E.2d 114 (1973), "the fact that one is intoxicated at the time does not necessarily render him incapable of comprehending the meaning and the effect of his words."  (App. at 155-56, ECF No. 20-2 at 31-32.)  In ruling that the third set of statements was admissible, the trial court found that it did not "think that his intoxication was such that he didn't realize what he was saying."  (App. at 156, ECF No. 20-2 at 32.)  The trial court further explained that contrary to trial counsel's argument that Captain Bromage had to keep bringing McCormick back to attention, "[w]hat it sounded like on the tape was additionally that he was getting him to verbally respond for him, and not just trying to bring him back as you characterized it.  As such, I do find that -- and he did sound coherent and cognizant and,

PJG

quite frankly, very intelligent. And as a result of that, I do believe that portion in those statements was voluntary." (Id.)

Finally, as indicated above, the trial court ultimately determined that the second set of statements was inadmissible in part because he found that McCormick was being "custodially interrogated" and was not Mirandized at that time. (App. at 179, ECF No. 20-2 at 55; see generally App. at 178-81, ECF No. 20-2 at 54-57.)

The South Carolina Court of Appeals dismissed McCormick's appeal following Anders review. As indicated above, on appeal, McCormick alleged in his *pro se* response that his Miranda rights were violated. The appellate court acknowledged that McCormick filed both a *pro se* brief and supplemental *pro se* brief in dismissing the appeal but did not discuss any of the claims in its opinion. (App. at 692, ECF No. 20-6 at 58.)

McCormick generally reasserts trial counsel's arguments in support of his position that the trial court erred, emphasizing his emotional duress, intoxicated state, and fear after Captain Bromage stopped him from leaving. Additionally, McCormick states that he recalls that he was not alone with Captain Bromage during the substation questioning; rather, McCormick alleges that there were up to seven officers in addition to Captain Bromage in the room. He also contends that the coroner is part of law enforcement as well as an agent of the state.[3]

Pursuant to Miranda v. Arizona, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it

---

[3] To the extent that McCormick raises other challenges outside the scope of the grounds presented in his Petition, these claims are not properly before the court. See, e.g., Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); White v. Roche Biomedical Labs., Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").



demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966).  However, "[i]f the defendant is not in custody then [Miranda and its progeny] do not apply; nor do they govern other, noninterrogative types of interactions between the defendant and the State (like pretrial lineups)." Montejo v. Louisiana, 556 U.S. 778, 795 (2009); see also J.D.B. v. North Carolina, 131 S. Ct. 2394, 2402 (2011)  (explaining that the determination of whether a suspect is in custody is an objective two-part inquiry—asking (1) what were the circumstances surrounding the interrogation and (2) given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave—to reach "the ultimate inquiry:  was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest") (internal citations and quotation marks omitted).  A waiver of Miranda rights must be voluntary, knowing, and intelligent.  Moran v. Burbine, 475 U.S. 412, 421 (1986).  "The waiver inquiry 'has two distinct dimensions':  waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' " Berghuis v. Thompkins, 560 U.S. 370, 382-83 (2010) (quoting Burbine, 475 U.S. at 421).  Further, in determining whether intoxication renders a statement involuntary,

> the mere fact that one has consumed alcoholic beverages does not mean that he is so intoxicated as to make his confession involuntary.  The standard is, was his confession the product of a rational intellect and free will, and is expressed in Townsend v. Sain, 372 U.S. 293, 307 (1963), as follows:
>> If an individual's 'will was overborne' or if his confession was not 'the product of a rational intellect and free will,' his confession is inadmissible because coerced.  These standards are applicable whether a confession is the product of physical intimidation or psychological pressure and, of course, are equally applicable to a drug-induced statement.

PJG

Boggs v. Bair, 892 F.2d 1193, 1198 (4th Cir. 1989). There must be evidence that the individual was "so intoxicated that his confession was not the product of his rational intellect and free will."[4] Id.

Based on the foregoing, considering the totality of the circumstances, the court finds the state court's analysis to be reasonable and concludes that McCormick has failed to demonstrate that the state court unreasonably misapplied clearly established federal law as decided by the Supreme Court in its ruling or that the state court made objectively unreasonable factual findings. See 28 U.S.C. § 2254(d), (e)(1). The state court reasonably determined that when the first set of statements was made that McCormick was not in custody at that time and that the statements were voluntary. Similarly, the state court reasonably found that when the third set of statements was made, McCormick's intoxication was not such that he did not realize what he was saying. Thus, the respondent's motion for summary judgment should be granted as to Ground Three.

### 3. Ineffective Assistance of Appellate Counsel (Ground Four)

A defendant has a constitutional right to the effective assistance of appellate counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in

---

[4] The court is cognizant that the United States Court of Appeals for the Fourth Circuit has recently stated when reviewing these issues that

> in Miller[ v. Fenton, 474 U.S. 104 (1985)], the Supreme Court held that in the federal habeas context, whether a confession was voluntary is a legal question requiring "independent federal determination." While Miller predated the enactment of AEDPA, courts have incorporated Miller's independent determination requirement into AEDPA's deferential standard of review. Thus, federal habeas courts must independently apply federal law to ultimately determine whether the state court's voluntariness determination was contrary to, or an unreasonable application of, that law.

Moss v. Ballard, 537 F. App'x 191, 196 (4th Cir. 2013) (citations omitted). To the extent that the current law requires the federal habeas court to independently apply federal law in this scenario, this court independently concludes that the record does not indicate that McCormick was too intoxicated make voluntary statements under federal law.



his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims"). To satisfy the first prong of Strickland, a petitioner must show that counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. In this case, McCormick challenges appellate counsel's failure to raise specific issues, which would require him to demonstrate "that his counsel was objectively unreasonable in failing to . . . discover nonfrivolous issues and to file a merits brief raising them," and "a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." Smith v. Robbins, 528 U.S. 259, 285 (2000) (citation omitted). With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington v. Richter, 562 U.S. 86, 105 (2011). The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether

counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u>

The Supreme Court has held that a decision containing a reasoned explanation is not required from the state court.  As stated above, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief.  In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Court of Appeals, which may provide reasons or theories that the appellate court could have relied upon in summarily denying McCormick's petition. Therefore, the court will first consider whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts.  Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the <u>Strickland</u> test in determining that no Sixth Amendment violation occurred.

As stated above, in Ground Four, McCormick alleges that appellate counsel was ineffective in failing to raise the issues presented above in Ground Three in his appellate brief.  The parties agree that this issue is necessarily interwoven or related to Ground Three.

In addressing this claim, the PCR court observed that McCormick testified that appellate counsel filed an <u>Anders</u> brief and failed to address the issues raised above in Ground Three. However, McCormick testified that he filed a *pro se* brief.  In denying and dismissing McCormick's application, the PCR court first discussed the applicable law, including the procedure and review required pursuant to <u>Anders</u>.  (App. at 756-57, ECF No. 20-6 at 122-23.)  The PCR court reasonably found in light of these procedures that "there can be no legitimate allegation of ineffective assistance

of appellate counsel because the reviewing court also conducted a full review of the record and found no issue of arguable merit." (App. at 757, ECF No. 20-6 at 123.)

Upon thorough review of the parties' briefs and the record in this matter, the court finds the PCR court's analysis to be reasonable and concludes that McCormick cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). Thus, McCormick cannot show "there was no reasonable basis" for the state appellate court to deny relief. Harrington, 562 U.S. at 98. As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101.

In response to the respondent's motion for summary judgment, McCormick generally reasserts his claims and reiterates his arguments as to the merits of his claim, which are addressed above in Ground Three, in support of his allegations of error. He also argues that if appellate counsel had sought a copy of the digital recording played during the pretrial hearing, he would have heard McCormick's slurred speech and presented a claim challenging whether the trial court erred in finding his statements were voluntary.

Upon careful review of the record and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that McCormick has failed to establish that appellate counsel's actions were error, much less that they were objectively unreasonable such that it rendered his performance deficient. Additionally, McCormick has failed to demonstrate that he was prejudiced and that, but for counsel's alleged errors, he would have prevailed on appeal. See Strickland, 466 U.S. at 694. Accordingly, McCormick's arguments fail to demonstrate that any of the PCR court's

PJG

findings were unreasonable nor have they shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410; see also Harrington, 562 U.S. at 101.  Therefore, the respondent's motion for summary judgment should be granted as to Ground Four.

###    4.    Evidentiary Hearing

McCormick also requests an evidentiary hearing on this Petition.  However, a federal evidentiary hearing is permissible for a particular claim only if, among other requirements, the claim was not "adjudicated on the merits by a state court."  Cullen v. Pinholster, 131 S. Ct. 1388, 1400 (2011).  If it was, a state prisoner is limited to "the record that was before that state court" in seeking federal habeas relief.  Id.; see also 28 U.S.C. § 2254(d)(2).  In this case, McCormick has failed to establish any exception to the general rule that review for habeas corpus purposes is generally limited to the evidence that was placed before the state court applies here.  See Cullen, 131 S. Ct. at 1400-01; see also 28 U.S.C. § 2254(e)(2).  Therefore, such a request should be denied.

RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 21) be granted and McCormick's Petition denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 3, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).